LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

INSURANCE CORPORATION OF IRELAND, LTD., et al., Defendants.

Civ. A. No. 87–1907.

United States District Court, W.D. Pennsylvania.

Aug. 30, 1988.

Dennis St. J. Mulvihill, Robb, Leonard, & Mulvihill, Pittsburgh, Pa., Joseph G. Manta, Manta & Welge, Philadelphia, Pa., for plaintiff.

Raymond .H. Conaway, Pittsburgh, Pa., for Hartford Acc.

Samuel W. Braver, Pittsburgh, Pa., for Aetna.

Kimball Ann Lane, Daniel L. Connors, New York City, for Puritan Ins. Co.

Peter J. Kalis, Donald E. Seymour, Pittsburgh, Pa., for Westinghouse & Thermo King.

James A. Mollica, Jr., Pittsburgh, Pa., Mitchell L. Lathrop, San Diego, Cal., for Puritan Ins. Co. and Old Republic.

Eric B. Bettelheim, Leonard A. Sheft, Sheft, Wright & Sweeney, New York City, for AIU Ins., Allianz Ins., Allianz underwriters, American Centennial Ins., American Home; Granite State, Ins. Co. of the State of Pa., Landmark, Lexington National Union Fire of Pittsburgh, Pa.

· James S. Ehrman, Pittsburgh, Pa., for Lumberman's Mut. Ins. Co.

## OPINION

MENCER, District Judge.

This lawsuit involves the insurance coverage of Westinghouse Electric Corporation's potential environmental liabilities. Liberty Mutual Insurance Company (Liberty Mutual) provided primary insurance to Westinghouse Electric Corporation and its subsidiary, Thermo King Corporation (collectively "Westinghouse"). Liberty Mutual filed this lawsuit against Westinghouse and its other insurers seeking a declaratory judgment as to each insurance company's liability for any sanctions imposed against Westinghouse. Westinghouse has filed a motion to dismiss, asserting that this court lacks subject matter jurisdiction over this dispute. Westinghouse's motion to dismiss is currently before this court.

### 1. Facts

Westinghouse is a large diversified corporation with numerous manufacturing operations. Currently, Westinghouse faces a plethora of toxic waste claims in at least twenty-three states. Some of these toxic waste claims are brought by the Environmental Protection Agency and comparable state agencies and could involve enormous liability for cleaning up the waste sites.

As a large corporation with complicated insurance needs, Westinghouse had a multi-layered lattice of insurance policies. Liberty Mutual provided Westinghouse's primary insurance. Above the policy limits provided by Liberty Mutual, Westinghouse had additional "layers" of insurance to cover excess liabilities. From 1956 through 1981, Westinghouse had between three and

nine layers of excess coverage, each layer comprised of between one and eleven policies. The individual policy limits ranged from $60,000 to $25 million, and the total coverage for a single year reached $200 million. Approximately 130 insurance companies participated in this insurance conglomeration.

The Insurance Corporation of Ireland, Ltd. (ICI) is one of the named defendants and is alleged to be the basis for federal subject matter jurisdiction. ICI is an insurance company located in Ireland. The Republic of Ireland owns a majority of the shares of ICI.

ICI did not issue any insurance policies directly to Westinghouse. Instead, ICI participated in two high-level excess policies issued by the Institute of London Underwriters/Companies Combined (Lloyd's). These policies provided $50 million coverage per year from April, 1973 to January, 1977, and ICI's share of the coverage ranged from 1.558% to 1.71%. The insurance underlying the Lloyd's policy consisted of four layers and fifty-two policies issued by eighty-two companies totalling $100 million. Thus, Lloyd's would be liable for the insurance claims exceeding $100 million for each of the four years from 1973 until 1977, and ICI would be liable for somewhat less than two percent of Lloyd's liability. If, however, Westinghouse's insurance claims exceed $150 million per year for the four relevant years, then ICI's share of the insurance coverage could amount to approximately $3.3 million.

Westinghouse initially filed a suit in the New Jersey Superior Court seeking to require its insurance companies to defend and indemnify Westinghouse during the environmental proceedings. The New Jersey court ruled that it would only consider insurance coverage of expenses related to toxic waste sites in New Jersey, and dismissed portions of the case. Liberty Mutual then filed this suit for declaratory judgment in the federal district court, asserting jurisdiction under the Foreign Sovereign Immunities Act of 1976 (FSIA).

### 2. Legal Analysis

Westinghouse's motion to dismiss raises two distinct grounds for dismissing parts of this case for lack of subject matter jurisdiction. First, it asserts that this court does not have jurisdiction to hear any portion of this dispute under FSIA. Second, it asserts that, if this court does have jurisdiction over ICI under FSIA, it should not exercise jurisdiction over the other 130 defendants.

### A. Jurisdiction over ICI

Liberty Mutual brings this action under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Act gives this court the power to determine the rights and legal relations of the parties in any matter within the court's jurisdiction. It does not confer subject matter jurisdiction over a matter not otherwise within our jurisdiction. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2766.

Liberty Mutual has asserted that this court has jurisdiction over this action under FSIA. FSIA, enacted in 1976, added § 1330 to U.S.C. Title 28, and governs federal jurisdiction over actions against foreign states. Section 1330 reads in part:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity....

Section 1603 defines "foreign state" to include any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof....

Both parties agree that the Republic of Ireland owns the majority of ICI, and, thus, that ICI qualifies as a foreign state under

§ 1603. Therefore, the issue before this court is whether this lawsuit contains a "nonjury civil action against" ICI as required by § 1330.

Westinghouse argues that Liberty Mutual's Complaint does not satisfy § 1330 because Liberty Mutual's claim is not "against" ICI. Actually, Westinghouse asserts, Liberty Mutual and ICI have the identical interest of avoiding coverage of Westinghouse's liabilities. The fact that Liberty Mutual has named ICI as an adverse party is irrelevant, Westinghouse contends, because the designation of the parties in the Complaint is not controlling with respect to jurisdiction. *Indianapolis v. Chase National Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). The court should "look beyond the pleadings" and realign the parties according to their real interests. *Id.* at 63, 62 S.Ct. at 15; *Bonar, Inc. v. Schottland,* 631 F.Supp. 990, 999 (E.D.Pa.1986).

Liberty Mutual responds to Westinghouse's argument by asserting that its interest is adverse to ICI's interest. It asserts that a divergence of interest between Liberty Mutual and ICI is most likely to occur in the following manner. If Westinghouse incurs high liability, then Liberty Mutual, as primary insurer, benefits if all the liability is in one year. Liberty Mutual would then pay the policy limit once, and the excess insurers (including ICI) would cover the balance. Conversely, ICI benefits if the claims are spread evenly over many years, so that Westinghouse's liability never exceeds $100 million in a given year. ICI would then not incur any liability. Toxic site cleanup is notoriously expensive, and the date of occurrence is often a contested fact in litigation. *See, e.g., Centennial Ins. Co. v. Lumbermens Mut. Cas. Co.,* 677 F.Supp. 342 (E.D.Pa.1987). Therefore, Liberty Mutual argues, its interest is likely to clash with ICI's interest.

In support of its contentions, Liberty Mutual cites *American Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146 (7th Cir.1981). American Motorists was one of Trane's excess insurers, and brought an action for declaratory judgment against Trane and Trane's other insurers. The district court realigned the primary insurer as plaintiff because it shared with American Motorists the interest of escaping liability on the claim. With the primary insurer as a plaintiff, diversity jurisdiction no longer existed, so the district court dismissed the Complaint. The Circuit reversed, holding that a shared interest in avoiding insurance coverage does not preclude two insurance companies from having adverse interests. The court found a genuine conflict among the insurance companies as to which company would pay the litigation costs of the insured. *See also American Mut. Liability Ins. Co. v. Flintkote Co.,* 565 F.Supp. 843, 847 (S.D.N.Y.1983) (citing *Trane,* 657 F.2d at 150, and *C.Y. Thomason Co. v. Lumbermens Mutual Casualty Co.,* 183 F.2d 729 (4th Cir.1950), for the proposition that insurance companies in actions brought to determine their respective liabilities often have "collisions of interest.").

Westinghouse does not cite any cases realigning insurance companies, but argues that *Trane* and *Flintkote* are distinguishable because they involved diversity jurisdiction, not foreign state jurisdiction. Westinghouse notes that diversity jurisdiction requires a controversy *between* citizens of different states, while § 1330 requires a civil action *against* a foreign state. Westinghouse does not provide any guidance as to its perception of the significance of the language in each provision and does not cite any authority relying on the different denotations of the two terms, but merely asserts that we should ignore *Trane* and *Flintkote* based on this distinction.

We are not persuaded that the difference in language between the two statutes has the significance that Westinghouse attaches to it. The use of the two terms seems to follow naturally from the number of parties examined under the statutes; § 1332 looks at the citizenship of both parties, and thus refers to a controversy *between* the parties, whereas § 1330 pertains to a foreign defendant and an action *against* that defendant. An examination of the legislative history of FSIA reveals no emphasis or discussion of the word

"against." 5 U.S.Cong. & Adm.News 1976 at 6604, 6610–11.

Although certainly not binding authority for this court, we find that *Trane* and *Flintkote* provide persuasive guidance. In light of the well known liability associated with toxic site cleanup and the uncertainty about the date of occurrence of contamination, we find that Liberty Mutual can properly name ICI as a defendant in this declaratory judgment action. Therefore, we decline to exercise our discretion to realign the parties.

Our conclusion that this court has jurisdiction over the dispute against ICI is consistent with our understanding of the purpose of FSIA. The legislative history of FSIA indicates that its purpose is to promote a uniform application of immunity towards foreign states, and to provide the federal forum to facilitate those objectives. 5 U.S. Cong. & Adm. News 1976 at 6604, 6610–11. *See also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 484, 103 S.Ct. 1962, 1966–67, 76 L.Ed.2d 81 (1983). Furthermore, the legislative history indicates an intent to *encourage* the bringing of actions involving questions of foreign immunity in federal court. 5 U.S. Cong. & Adm. News 1976 at 6604, 6610–12. Because this case involves a foreign state and potentially involves an application of foreign sovereign immunity laws, we find that the case against ICI is properly in federal court.

Westinghouse also argues that, even if this court technically has jurisdiction over this dispute under FSIA, we should not exercise that jurisdiction because ICI's share of the total liability is so small. The maximum liability that ICI could incur is $3.3 million, which represents 0.55% of the total liability. Westinghouse's contention is eviscerated by the language of § 1330, which confers jurisdiction "without regard to amount in controversy."

### B. *Scope of the "Action"*

██ Westinghouse next argues that, even if this court has jurisdiction over the claim against ICI, it does not have jurisdiction over the claims against the other 130 defendants. Liberty mutual asserts two bases for jurisdiction over the domestic defendants.

First, Liberty Mutual argues that § 1330 confers jurisdiction over the entire action, not just the claim against the foreign state. Although neither party cited any cases addressing the scope of an action under § 1330, Liberty Mutual provided substantial support for its position.

Liberty Mutual argues that FSIA includes a comprehensive jurisdictional scheme embodied in § 1330 and § 1441 (removal to federal court). In support of this contention, Liberty Mutual cites *Rex v. Cia. Pervana De Vapores, S.A.*, 660 F.2d 61, 63 (3d Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982), and *Ruggiero v. Compania Pervana De Vapores "Inca Capac Yupanqui"*, 639 F.2d 872, 876 (2d Cir.1981). In *Ruggiero*, the court wrote that, "the [House and Senate] reports thus confirm what is patent from the statutory language—Congress wished to provide a single vehicle for actions against foreign states or entities controlled by them, to wit, § 1330 and § 1441(d), its equivalent on removal." *Ruggiero*, 639 F.2d at 878. Thus, we will consider cases and policies involving § 1441(d) in applying § 1330.

Under § 1441(d), Liberty Mutual argues, the intent to include domestic defendants is clear. Liberty Mutual cites a line of cases allowing the removal of the entire action when one defendant invokes FSIA. In *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir.1980), the court stated that,

> [FSIA's] legislative history indicates a rather clear congressional intent that when a "foreign state," joined with other non-foreign codefendants in state court, petitions for removal, it is *the action*— embracing all defendants—that is to be transferred to federal court.
>
> ... FSIA ... 'permits the removal of any such action at the discretion of the foreign state, *even if there are multiple defendants and some of these defendants desire not to remove the action or*

*are citizens of the State in which the action has been brought.'*

*Id.* at 1375 (quoting H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 32, U.S.Code Cong. & Admin.News 1976, pp. 6604, 6631). *See also Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578 (E.D.Pa.1985), *aff'd without opinion,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed. 2d 581 (1986); *Mori v. Port Authority of New York and New Jersey,* 100 F.R.D. 810, 812 (S.D.N.Y.1984). *But see Hinkle's Jeep Sales v. Villa Enterprises, Inc.,* 90 F.R.D. 49 (S.D.Fla.1981) (remanding the case to state court because the plaintiff had withdrawn the action against the foreign state).

Liberty Mutual also argues that the legislative history indicates a similar scope for § 1330. In *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 497, 103 S.Ct. 1962, 1973, 76 L.Ed.2d 81 (1983) the court wrote:

> Congress, pursuant to its unquestioned Article I powers, has enacted a broad statutory framework governing assertions of foreign sovereign immunity. In so doing, Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 states.

As discussed in Part A of this opinion, we have concluded that Congress intended to facilitate and encourage the bringing of actions involving questions of foreign sovereign immunity in federal court. A system that allowed a plaintiff to bring to federal court only those portions of his action involving the foreign state and to try the other portions in state court would frustrate Congress' explicit objectives.

In reviewing cases under FSIA naming both foreign and domestic defendants, this court found numerous cases which exercised jurisdiction over all defendants. *See, e.g., Garcia v. Public Health Trust of Dade County, et al.,* 841 F.2d 1062 (11th Cir.1988) (medical malpractice and negligence action against Iberia Airlines and several domestic defendants removed to federal court pursuant to FSIA); *Johnson v. American Airlines,* 834 F.2d 721 (9th Cir.1987) (action against domestic and foreign airline removed to federal court); *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983) (hostages and their families brought suit against Iran and the United States under § 1330). Conversely, we were not able to locate any case in which a court refused to extend FSIA jurisdiction over a domestic defendant when it was exercising jurisdiction over a foreign defendant.

In sum, we find that this court's jurisdiction under § 1330 extends to the domestic defendants as well as ICI. Under any definition of the word "action," the insurance obligations of Westinghouse's various insurers with respect to its environmental liabilities constitute a single action. In FSIA, Congress created a single jurisdictional scheme conferring jurisdiction over the entire action if it includes a foreign state.

### C. *Pendent Jurisdiction*

As an alternative to direct jurisdiction over the domestic defendants under § 1330, Liberty Mutual asserts that the interrelation of the facts and legal issues in this case confers pendent party jurisdiction over the claims against the domestic defendants. Although we have already concluded that this court has jurisdiction under § 1330 over the entire action, we will consider pendent party jurisdiction as an alternative basis.

The concept of pendent jurisdiction is well settled.[1] In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966), the Court ruled that when two parties are in federal court to resolve a federal claim, then the court has jurisdiction to resolve an integrally related state law claim. *Id.* at 725. Such jurisdiction is often referred to as "pendent claim" jurisdiction.

---

1. For a more detailed history of the development of pendent party jurisdiction, see Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3567.2; *Lovell Mfg. v. Export–Import Bank,* 843 F.2d 725 (3d Cir.1988).

While pendent claim jurisdiction is clearly permissible if the parties are already properly before federal court, it is less certain whether one can exercise pendent jurisdiction over a party not already appearing in federal court. Such jurisdiction is referred to as "pendent party" jurisdiction, and has been greatly limited by the case law after *Gibbs*.

In particular, the Supreme Court limited the scope of pendent party jurisdiction in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). In *Aldinger*, the plaintiff sought to extend federal jurisdiction over a state law claim against a county based on the claim's relationship to a civil rights suit against a county official. At the time, § 1983 did not apply to counties, and the federal court had no independent basis for jurisdiction over the county. The court refused to allow jurisdiction over the county, holding that pendent party jurisdiction should be applied with great reservation. The court counseled against using pendent party jurisdiction to countermand the congressional intent to limit access to federal court.

In the years following the *Aldinger* opinion, the Third Circuit began developing case law refining the doctrine of pendent party jurisdiction under the parameters of *Aldinger*. In *Wilkes Barre Publishing Co. v. Newspaper Guild*, 647 F.2d 372 (3d Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982), the plaintiff sued several defendants, one of whom was party to a collective bargaining agreement. The plaintiff asserted jurisdiction over the action against that defendant under the Labor Management Relations Act, and asserted pendent party jurisdiction over the other defendants. Because of the Congressional intent to limit the LMRA to collective bargaining agreements, the court refused to exercise pendent party jurisdiction. *Id.* at 376. *See also Kerry Coal Co. v. United Mine Workers*, 637 F.2d 957, 965 (3d Cir.), *cert. denied*, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981).

In 1984, the Third Circuit issued *Sansom Committee by Cook v. Lynn*, 735 F.2d 1535 (3d Cir.) (Garth, J., dissenting), *cert.* *denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). The court wrote that pendent party jurisdiction should not be exercised expansively, and that courts should focus on the particular federal statute to determine to what extent Congress intended to extend federal jurisdiction.

Recently, the Third Circuit issued an opinion in *Lovell Mfg. v. Export–Import Bank of the U.S.*, 843 F.2d 725 (3d Cir. 1988), in which the court further curtailed the doctrine of pendent party jurisdiction. In *Lovell*, the plaintiff brought suit against a federal agency and a private insurance organization. Early in the proceedings, the plaintiff withdrew his claim against the federal agency, but both parties urged the court to retain pendent party jurisdiction over the remaining defendant.

Initially, the court questioned whether the doctrine was viable in the Third Circuit. *Id.* at 731. The court stated that, "in spite of our strong reservations about the availability of the doctrine, we need not rule definitively on that question here, because we have no doubt that, to the extent pendent-party jurisdiction might be available in certain circumstances, this case is not an appropriate case to apply it." *Id.* at 732. In refusing to apply pendent jurisdiction the court relied on the fact that the case against the federal agency had been withdrawn, that the case predominately involved issues of state law, and that the entire case could have been brought in state court. *Id.*

*Lovell* considered pendent jurisdiction under 28 U.S.C. § 1331. Only one reported case directly addressed the issue of pendent jurisdiction under § 1330. In *Tri–Ex Enterprises v. Morgan Guaranty Trust Co.*, 596 F.Supp. 1, (S.D.N.Y.1982), the plaintiff sued Morgan Guaranty Trust Co., the Federal Republic of Nigeria, the Central Bank of Nigeria, and Alan London. London moved to dismiss, arguing that Tri-Ex Enterprises did not have jurisdiction over him under § 1330. The court ruled that "§ 1330 does not preclude the existence of pendent party jurisdiction over a nondiverse defendant. To the contrary, this section of the FSIA evinces a Congres-

sional intent to broaden federal jurisdiction by allowing all suits growing out of transactions involving foreign sovereigns to be heard in a federal forum." *Id.* at 5.

Although this court found no other cases directly addressing the issue of pendent jurisdiction under § 1330, we did locate cases involving both foreign and domestic defendants brought under FSIA. *See, e.g., Garcia v. Public Health Trust of Dade County, et al.,* 841 F.2d 1062 (11th Cir. 1988) (medical malpractice and negligence action against Iberia Airlines and several domestic defendants removed to federal court pursuant to FSIA); *Johnson v. American Airlines,* 834 F.2d 721 (9th Cir. 1987) (action against domestic and foreign airline removed to federal court); *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983) (hostages and their families brought suit against Iran and the United States under § 1330).

■ It is, thus, clear from our examination of cases brought under FSIA that, if related claims against domestic defendants are not part of a single action, then pendent party jurisdiction can extend over domestic defendants. Furthermore, the congressional intent behind FSIA to facilitate the bringing of actions involving immunity issues in federal court implies at least limited pendent jurisdiction. Without pendent jurisdiction, plaintiffs would often face the choice of litigating their claims piecemeal or bringing the claims in state court, a result clearly contrary to Congressional design.[2]

In spite of this apparent consensus about the availability of pendent party jurisdiction under FSIA, the extreme dominance of the pendent claims in this case injects some doubt about whether to exercise pendent party jurisdiction. This truly is a case of "the cart pulling the horse" into federal court; because this court has jurisdiction over one defendant with a maximum exposure of less than one percent of the total liability, the plaintiff is urging us to exercise jurisdiction over the remaining 130 defendants.

As previously discussed, the legislative history and case law clearly allows the removal of the entire action when one defendant invokes FSIA. *See, e.g., Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir.1980); *Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578 (E.D.Pa. 1985), *aff'd without opinion,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Mori v. Port Authority of New York and New Jersey,* 100 F.R.D. 810, 812 (S.D.N.Y.1984). *But see Hinkle's Jeep Sales v. Villa Enterprises, Inc.,* 90 F.R.D. 49 (S.D.Fla.1981) (remanding the case to state court because the plaintiff had withdrawn the action against the foreign state).

Westinghouse argues that we should not apply the standards set forth in *Arango, Tucker,* and *Mori* because those cases involved removal, not original jurisdiction. Although the distinction highlighted by Westinghouse is unarguably present, it seems a distinction without substance; a case cannot be removed successfully if the court does not have jurisdiction over the dispute. Westinghouse does not explain the significance of this distinction, and, in fact, *Lovell,* the case relied on by Westinghouse to support the argument that pendent jurisdiction is judicially disfavored, involved removal. As we concluded in Part B, the concepts from removal carry over to § 1330. Therefore, we find that the policies in *Arango, Tucker,* and *Mori* apply to the facts in this case.

■ The arguments in favor of and against the exercise of pendent jurisdiction

---

**2.** Westinghouse argues that the added expense of forcing Liberty Mutual to litigate the action twice could have been avoided if Liberty Mutual had sued all the defendants in state court. Westinghouse contends that ICI could not have removed the case to federal court because Lloyd's signed a forum consent clause. However, an agreement to a forum consent clause does not constitute a waiver of the right to removal under FSIA. *See Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.,* 760 F.2d 390 (2d Cir.1985); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3729. Therefore, we will assume that, if Liberty Mutual were to bring the entire action in state court, then ICI could remove the action back here. Whether ICI would choose to remove the case is, of course, uncertain.

are not easily reconciled under the facts of this case. On one hand, the Third Circuit announced its intention to curtail pendent party jurisdiction in *Lovell*. On the other hand, Congress expressed its intent to expand federal jurisdiction in order to facilitate the bringing of cases involving immunity issues in federal court. These policies clash squarely under the facts of this case, and one policy must yield. Based on the history and development of the pendent jurisdiction doctrine and the differences between *Lovell* and this case, we conclude that exercising jurisdiction over the entire action is the proper outcome.

First, we note that the basis for the current disregard for pendent jurisdiction is a hesitancy to extend federal jurisdiction beyond Congressional mandate. For example, in *Aldinger*, the Court based its decision on the original Congressional intent not to subject counties to § 1983 liability. The Court refused to allow the plaintiff to circumvent Congressional intent by asserting pendent party jurisdiction over a county. *See also Wilkes Barre Publishing Co. v. Newspaper Guild*, 647 F.2d 372 (3d Cir. 1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (Congressional intent to confer jurisdiction over parties to collective bargaining agreements only); *Lovell*, 843 F.2d 725 (the limited federal jurisdiction cannot be circumvented based on a frivolous claim against a federal agency).

Under FSIA, however, the intent is clear to permit pendent jurisdiction against some domestic defendants. Congress explicitly allowed removal of the entire action to federal court despite the objections of domestic defendants. It expressed a desire to channel immunity litigation through federal court to foster a uniform application of immunity law. A policy not allowing any domestic defendants would certainly frustrate the Congressional objectives in FSIA.

Courts adjudicating cases with both foreign and domestic defendants usually accept pendent jurisdiction as a given, and do not even discuss the presence of these defendants. *See, e.g., McKeel v. Islamic Republic of Iran*, 722 F.2d 582 (9th Cir.1983). Although these cases do not typically involve an enormous imbalance between domestic and foreign defendants, it is clear that Congress did not intend to require that the claim against the foreign state dominate the case; § 1330 confers jurisdiction without regard to amount in controversy.

Thus, Congress intended to extend federal jurisdiction over claims of all sizes against foreign states and intended that jurisdiction to encompass domestic defendants. Westinghouse asks us to make a determination that if the ratio of the significance of the foreign claim to the domestic claim becomes too small, then the court will refuse to exercise jurisdiction over the domestic claims. Congress has not indicated that such a test exists, and this court is not convinced that Congress intended to so limit FSIA.

Second, we note that *Lovell*, the Third Circuit case relied upon extensively by Westinghouse, can be distinguished from the present situation in significant aspects. *Lovell* involved federal question jurisdiction, § 1331, and this case arises under § 1330. This difference is meaningful; *Lovell* questioned the viability of pendent party jurisdiction under § 1331, yet we have already established a consensus that pendent party jurisdiction exists at least to some extent under § 1330. Pendent party jurisdiction under § 1331 must, by definition, superimpose dissimilar legal issues, some under federal law and some under state law. This case involves only one cause of action and one set of issues. Separate trials in this case would entail complete duplication of the legal and factual issues.

In addition, *Lovell* represents the most extreme example of pendent jurisdiction readily imaginable. In *Lovell*, the plaintiff voluntarily withdrew the only claim over which the court had jurisdiction. The court did not actually delineate under what circumstances pendent jurisdiction was available because of the court's conclusion that, "to the extent pendent-party jurisdiction might be available in certain circumstances, this case is not an appropriate case to apply it." *Lovell*, 843 F.2d at 732. Although extreme, the facts before this court are not

as extreme as the facts in *Lovell* in that we have a claim that is legitimately in federal court.

In conclusion, the policy in the Third Circuit of limiting pendent jurisdiction focuses on upholding Congressionally proscribed boundaries of federal jurisdiction. With respect to FSIA, Congress has indicated an intent and an expectation that litigation under the Act would include domestic defendants not otherwise subject to federal jurisdiction. While Congress did not express an anticipation of the imbalance of foreign and domestic defendants present in this case, neither did Congress indicate an intention to limit the plaintiff's ability to include domestic defendants at a certain number or percentage of the total claim. Indeed, FSIA's legislative history reveals an intent to create an inviting portal to the federal courts. Although this exercise of pendent jurisdiction is extreme, judicial economy and practicality favor trying this complicated litigation once, not in tandem in state and federal court.

### 3. Conclusion

We find that this court has jurisdiction over all the defendants in this case. FSIA plainly gives us jurisdiction over ICI. We also find that FSIA gives us jurisdiction over the domestic defendants. Even if FSIA did not confer jurisdiction over the domestic defendants directly, however, we would exercise pendent jurisdiction over those defendants. Given this court's jurisdiction over ICI, we believe that this complicated action ought to be litigated in its entirety in one courtroom.

### ORDER

AND NOW, this 30th day of August, 1988, for the reasons set forth in the accompanying Opinion,

IT IS HEREBY ORDERED that the Motion for Dismissal on Behalf of Westinghouse Electric Corporation and Thermo King Corporation is DENIED.