## EMPLOYERS INSURANCE OF WAUSAU

v.

## CROWN CORK & SEAL COMPANY, INC., Aetna Casualty & Surety Company, Continental Insurance Company, Insurance Company of North America, Lumbermen's Mutual Casualty Company, Firemen's Fund Insurance Company, and Allianz Underwriters, Inc.

### Civ. A. No. 88–9461.

United States District Court, E.D. Pennsylvania.

Dec. 19, 1990.

Steven Kudatzky, Duane, Morris & Heckscher, Medford, N.J., Martin E. Levin, Zelle & Larson, Waltham, Mass., for Employers Ins. of Wausau.

Edward M. Dunham, Jr., Miller, Marvin, Dunham, Doering and Schreiber, Philadelphia, Pa., for Aetna Cas. & Sur. Co.

Timothy C. Russell, Drinker, Biddle & Reath, Philadelphia, Pa., for Lumbermen's Mut. Cas. Co.

Richard M. Shusterman and Rejina Mapes, White & Williams, Philadelphia, Pa., for Insurance Co. of North America.

K. Thomas Shahriari, Bivona & Cohen, Washington, D.C., for Firemen's Fund Ins. Co.

Michael J. Stack, Jr., Stack & Gallagher, Philadelphia, Pa., for Crown Cork & Seal Co.

George R. Hardin and Mary Ellen Myers, Bumgardner, Hargin & Ellis, Springfield, N.J., for Continental Ins. Co.

Mitchell S. Pinsly, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, Pa., Sheldon Karasik, Sheft & Sweeney, New York City, for Allianz Underwriters, Inc.

## MEMORANDUM

LUDWIG, District Judge.

Defendant Crown Cork & Seal Company, Inc. moves to dismiss for lack of subject matter jurisdiction claiming that once the parties are properly aligned, genuine diversity is lacking. Fed.R.Civ.P. 12(h)(3), 28 U.S.C. § 1332.

This action is on remand from our Court of Appeals, 905 F.2d 42 (3d Cir.1990), where its procedural history was summarized as follows:

> [Wausau] alleges that it is one of seven insurance companies which issued comprehensive general liability and/or excess umbrella policies to Crown ... spanning a period of approximately 25 years. Crown has been named as a defendant or a potentially responsible party in claims arising out of alleged environmental hazards at more than twenty waste disposal sites located throughout the country. On February 19, 1988 Crown filed a complaint in the New Jersey Superior Court, Law Division, against Wausau, Aetna Casualty & Surety Company (Aetna), Insurance Company of North America (INA), Continental Insurance Company (Continental), Lumbermen's Mutual Casualty Company (Lumbermen's), Firemen's [sic] Fund Insurance (Fireman's), and Allianz Underwriter's, Inc. (Allianz), seeking, *inter alia*, a declaration of the obligations of the insurers to indemnify and defend Crown in the underlying actions. On December 12, 1988, approximately ten months after Crown filed its New Jersey action,[1] [*] Wausau filed this suit in district court ... seek[ing] a declaration pursuant to the Federal Declaratory Judgement Act,

28 U.S.C. § 2201, "of the scope and nature of its obligations and those of the defendant [insurers], if any, as the issuers of ... insurance policies ... to [Crown]."

> Crown moved in the federal action to realign the defendant insurers as plaintiffs with Wausau on the ground that all of the insurance carriers have a "consonant interest" in avoiding liability for either defense or indemnification of Crown.... Crown argued that if the parties were realigned, complete diversity would be destroyed, as Crown, the defendant, and INA, a realigned plaintiff, are both citizens of Pennsylvania. Crown argued, in the alternative, that even if the parties were not realigned, the court should dismiss or stay the action "in favor of the first-filed state court action" pending in the New Jersey Superior Court....

> [T]he district court, without deciding the jurisdiction issue, granted Crown's motion for a stay [reasoning] that it had the discretion to stay the action under the Declaratory Judgment Act or, in the alternative, on abstention grounds.... Wausau ... appeal[ed].

*Wausau*, 905 F.2d at 44–45 (3d Cir.1990) (footnote 2 omitted).

The Court of Appeals reversed stating that because:

> [t]he district court's grant of the stay amount[ed] to the exercise of its dominion over this matter, clearly presupposing that it had subject matter jurisdiction in the first instance ... [i]t was therefore bound to first consider Crown's challenge to the diversity between the parties raised in Crown's motion for realignment before it granted the stay.

*Wausau*, 905 F.2d at 45.

The action was remanded so that the district court "can undertake the inquiry into the threshold question every federal court must decide *ab initio*, that of its

---

[*] *Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 44 n. 1 (3d Cir.1990) ("Wausau contends, and Crown does not contest, that Crown did not mail the summons in the state court action until December 12, 1988, the same day that Wausau filed this action, and that Wausau did not receive the summons until December 15, 1988 three days after the federal suit was filed").

subject matter jurisdiction." *Wausau,* 905 F.2d at 47. The following guidance was given as relates to the multi-insurer setting of this case in which party re-alignment would destroy complete diversity:

This court has adhered to the "principal purpose" test enunciated by the Supreme Court in *Indianapolis [v. Chase Nat'l Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941)]. Although other courts have apparently deviated from this test in favor of a determination as to whether there is any "substantial conflict," regardless of whether it concerns primary or non-primary issues, we agree with the Ninth Circuit that *Indianapolis* requires a real dispute on a primary issue in the controversy.

\*　　\*　　\*　　\*　　⸬　　\*

Several courts have held that the mere fact that every insurer seeks to avoid liability does not necessarily require a finding in every such case that all of the insurers must be aligned against the insured.

\*　　\*　　\*　　\*　　\*　　\*

However, the mere fact that there are real disputes among the insurers as to the "trigger of occurrence" and the distribution of coverage between primary and excess carriers does not necessarily permit their alignment into separate camps when the insured is also a party with interests antagonistic to all. *It will be necessary to ascertain whether the disputes among the insurers are, as a practical matter, merely subsidiary issues to a more fundamental dispute between the parties with respect to the coverage of these types of policies over the types of claims asserted against Crown.* (Citations omitted.)

*Wausau,* 905 F.2d at 46–47. (Emphasis added.)[1]

Contra the motion, plaintiff and all of the defendant insurers join in asserting that there is no single primary or principal issue in this declaratory judgment action. They note that the insurance contracts differ from each other, so that no insurer can be assumed to be affected by a coverage ruling as to another insurer. Each insurer asks for a determination that it is not obligated under its policy, but if it is obligated, the others are as well. Each argues that if Crown can demonstrate that there is coverage under any one policy, a complete adjudication of rights and obligations will require determinations to be made under the other insurers' policies. INA's position is illustrative:

[I]n this case, although each of the insurer parties may have an interest ... in avoiding coverage for Crown Cork's underlying environmental claims, their interests are *not* entirely congruent. As the pleadings of record demonstrate, each insurer is *also* interested in establishing that, in the event Crown Cork is adjudged entitled to *coverage,* that insurer's own policy is not obligated to respond. These inherently conflicting interests, which render each insurer an adversary to the other carriers, clearly implicate the "primary and controlling matter in dispute."

INA mem. at 21–22.[2]

As movant, Crown's position is that the conflicts among the insurers are necessar-

---

**1.** Because "[t]he diversity issue depends not only on realignment but also on Crown's citizenship," the Court of Appeals also directed the district court to address this issue on remand. *Wausau,* 905 F.2d at 47 n. 5. The parties have agreed that "[s]ince at least 1960 ... Crown [has] maintained its principal corporate offices in Philadelphia, Pennsylvania." Stipulation of citizenship, ¶ 4. Inasmuch as Crown has its principal place of business in Pennsylvania, it is a citizen of this Commonwealth. 28 U.S.C. § 1332(c)(1). The parties have also agreed that INA is a citizen of Pennsylvania. Stipulation of citizenship, ¶ 1(c). Accordingly, if the parties are realigned as moved for, diversity will not obtain.

**2.** *See also* Wausau mem. at 20–21 ("[I]f Crown meets the burden of proving coverage under any Wausau policy, Wausau cannot obtain a complete adjudication of its rights and obligations under the contract short of adjudication of the rights and obligations of Crown's other insurers under those other insurer's contracts which Crown also contends provide coverage"); Continental mem. at 7–8 ("[E]ach parties' [sic] position is unique to its own contract as well as to the posture of that contract in the policy portfolio of the insured. Of necessity, a declara-

ily contingent upon a finding that insurance coverage is due. The controversy over apportionment emerges only *after* each company's liability is determined in Crown's favor. If the outcome is non-coverage, " 'adversity' among [the] insurers ... will never materialize." Crown mem. at 4. Utilizing this focus, the primary or basic issue in the controversy, upon which each of the insurers is aligned against Crown, is whether or not coverage exists under the individual insurance contracts. Apportionment or allocation of coverage, Crown contends, is subsidiary to that question.

Applying the "principal purpose test" enunciated in *Indianapolis* to a multi-party case where more than one material controversy may demand resolution can be problematical. There, the Court stated that "[t]he facts leave no room for doubt that on the merits only one question permeates this litigation.... The rest is window-dressing designed to satisfy the requirements of diversity jurisdiction. Everything else in the case is incidental to this dominating controversy." *Indianapolis,* 314 U.S. at 72, 62 S.Ct. at 18. Here, such an obvious demarcation is lacking. The apportionment issue, while subordinate to coverage, is not mere "window dressing." Both issues may be essential to a determination of the extent of each insurer's liability to Crown. An important purpose of Wausau's action is to obtain a declaration "that it has no obligations whatsoever under its policies for Crown's claims." Wausau's mem. at 19. But Wausau "also seeks, in the alternative, a declaration of the rights and obligations of Crown and Crown's other insurers in the event Wausau were to be found liable to Crown." *Id.* The other insurers ask for the same primary and alternative declarations.[3]

Under *Indianapolis,* as refracted here by our Court of Appeals, the present alignment of the parties can not be justified. While the coverage and apportionment issues can be turned back and forth kaleidoscopically, the objectives and ultimate interests of all the insurers remain adverse to those of the insured. If a severability approach is taken and the action is viewed as involving only Wausau versus Crown, the defendant insurers might well have no position on the issue of Wausau's coverage obligation. They could be aligned just as easily as plaintiffs or defendants. If Wausau is found to have an insurance obligation to Crown, then all of the defendant insurers become adverse to both Wausau and Crown on the issue of coverage and to Wausau on the issue of apportionment. On the other hand, if Wausau were to defeat Crown's coverage claim and were dropped out of the case, then Crown and the other insurers would find themselves on the same side as defendants. Realignment would become a self-evident necessity to resolve Crown's undoubtable cross-claims against the other insurance carriers. The argument of the insurers that coverage and apportionment are interdependent issues only reinforces the conclusion that all of the insurers are adverse to the insured. Even as to the basic question of subject matter jurisdiction, which *Indianapolis* hinges on a realistic appraisal of ultimate interests, all the insurers have aligned themselves against the insured. Moreover, the insurers can have no obli-

tion of the rights and obligations under the various policies at issue in this litigation requires decisions which will impact differently on the various insurers"); Aetna mem. at 8 ("Wausau's principal purpose in bringing this action was to obtain a *full* adjudication of its potential liability, including the extent to which its liability is limited by coverage under other insurer's policies"); Lumbermen's mem. at 9 ("The 'primary and controlling matter in dispute' in this case ... is: Which party or parties shall bear the responsibility for paying the costs arising from the environmental claims against the insured"); Allianz mem. at 10 ("[A]ny decision regarding the coverage allegedly due to Crown must necessarily address which of the insurers, if any, are obligated to provide such coverage").

3. *See, e.g.,* INA mem. at 21 ("[A]lthough each of the insurer[s] may have an interest ... in avoiding coverage ... each insurer is *also* interested in establishing that, in the event Crown Cork is adjudged entitled to coverage, that particular insurer's own policy is not obligated to respond"); Allianz mem. at 1 ("[T]he disputes among the insurers are among the fundamental disputes between the parties").

gations *inter se.* Apportionment relates to the allocation of total liability owed to the insured.

There can be only one "dominating controversy," *Indianapolis,* 314 U.S. at 72, 62 S.Ct. at 18, only one "primary issue that divides the parties," *Wausau,* 905 F.2d at 47, no matter how entwined with subsidiary matters it may be. *See Continental Airlines v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 n. 2 (9th Cir.1987) ("[T]he 'principal purpose' of MDC's federal suit was, in that party's own words, to obtain a 'declaration that the exculpatory clause precluded *all* of Continental's claims arising out of the accident. . . .' [T]he manufacturer's internal dispute over contribution was ancillary to the essential controversy"). To argue otherwise [4] is to "deviate[ ] from [the principal purpose test] in favor of a determination as to whether there is any 'substantial conflict,' regardless of whether it concerns primary or nonprimary issues," a deviation our Court of Appeals has rejected. *Wausau,* 905 F.2d at 46.[5]

Despite the "well known liability associated with toxic site cleanup and the uncertainty about the date of occurrence of contamination," *Liberty Mutual Insurance Co. v. Insurance Corp. of Ireland, LTD,* 693 F.Supp. 340, 344 (W.D.Pa.1988), it cannot be "assum[ed] . . . that at least one insurer owes coverage," *U.S. Fidelity & Guaranty Co. v. Korman Corp.,* 693 F.Supp. at 257, given that each denies its existence.[6] The primary issue in this controversy is whether any insurer is obligated according to the terms of its own policy to defend or indemnify Crown against the pending environmental clean-up claims. Only then is apportionment and insurer conflict implicated.[7]

A recently reported decision in a district of the Sixth Circuit, involving the same type of multi-insurer and insured dispute, concluded that party realignment was required, thereby destroying diversity jurisdiction. That Court of Appeals "has addressed very few cases involving proper party alignment where subject matter jurisdiction is based on diversity of citizenship. [But it] has recognized the general rule that unless antagonism dictates otherwise, parties should ordinarily be aligned according to 'their real interests in the matter in controversy.' " *United States Fidelity &*

---

**4.** *See, e.g.,* Aetna mem. at 4 ("It cannot be said that one purpose is more primary than the other"); Wausau mem. at 19 ("[T]here is more than one 'primary' or 'principal' purpose of this suit"); Lumbermen's mem. at 26 ("This case is a complex case involving many 'primary' coverage issues").

**5.** Wausau and the defendant insurers rely on cases that pre-date our Circuit's decision in this case and utilize a "substantial conflict" determination in place of the "principal purpose test." *See, e.g., American Motors Insurance Co. v. Trane Co.,* 657 F.2d 146, 151 (7th Cir.1981) ("Realignment is proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the lawsuit"); *American Mutual Liability Insurance Co. v. Flintkote Co.,* 565 F.Supp. 843, 847 (S.D.N.Y.1983) ("[T]he controversy between American and Liberty well exceeds the threshold required to find such 'collision' of interests as would bar realignment"); *U.S. Fidelity & Guaranty Co. v. Korman Corp.,* 693 F.Supp. 253, 257 (E.D.Pa.1988) ("[R]ealignment is proper when there is no actual, substantial controversy between parties on one side of the dispute and their opponents); *Aetna Insurance Co. v. Pennsylvania Manufacturers Association Insurance Co.,* 456 F.Supp. 627, 631 (E.D.Pa.1978)

("[T]here is in fact an actual and substantial controversy between Aetna and Publicker such that it would be improper to realign the parties").

**6.** *See Crown Cork & Seal Co., Inc. v. Aetna Casualty & Surety Co., et al.,* No. W–007456–88, Superior Court of New Jersey, Law Division, defendants' answers and affirmative defenses (where each insurer affirmatively denies any coverage responsibilities). Wausau's argument is that "unless this court can reasonably posit that Crown will be unable to establish an 'occurrence' in any of the fifty underlying claims, it is arbitrary to align the insurers together simply because they will theoretically all escape liability if no 'occurrence' can be shown," Wausau mem. at 21–22 n. 9. This is not only inconsistent with each insurer's assertion of non-liability, but it also misplaces the burden in carrying this motion. In the face of specific denials, the court may not assume the existence of insurance coverage simply to allow those parties who deny it to remain in a particular forum.

**7.** Most of the insurers implicitly recognize this point. *See, e.g.,* Allianz mem. at 12 ("[I]t is the adjudication of basic coverage issues which will create controversy among the carriers").

*Guaranty Co. v. Thomas Solvent Co.,* 132 F.R.D. 660, 667 (W.D.Mich.1990).[8] As reasoned by the district court:

> The controlling matter in dispute was and is the scope and coverage of the insurance policy contract that the insureds had with each insurance company. It is certainly true that USF & G's interests are adverse to the interests of the other insurance companies in the sense that it would like to minimize its liability and maximize the liability of the other companies. If the insureds were not parties to the dispute, proper alignment would be according to the conflict between the insurance companies. The principal purpose of the suit and the controlling matter in dispute in this case, however, involve the construction, scope, and enforceability of each contract vis-a-vis the insured.

*Thomas Solvent,* 132 F.R.D. at 667–68.

The same result is reached here. Inasmuch as realignment of the parties—placing the insurance carriers on one side and the insured on the other—is necessary in this case, and complete diversity is destroyed upon realignment, this court is found to lack subject matter jurisdiction. The action must, therefore, be dismissed.

Even, however, if the motion to realign were denied and there were diversity jurisdiction based on the alignment in the complaint as filed, this action should be stayed pending the outcome of the New Jersey action.[9]

---

**8.** *Compare Continental Airlines v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519 (9th Cir.1987); *Lowe v. Ingalls Shipbuilding, A Division of Litton Sys., Inc.,* 723 F.2d 1173 (5th Cir.1984) (requiring that the parties be aligned consistent with the primary dispute or according to their ultimate interests in the outcome) *with American Motorists Insurance Co. v. Trane Co.,* 657 F.2d 146 (7th Cir.1981); *Farmers Alliance Mutual Insurance Co. v. Jones,* 570 F.2d 1384 (10th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978); *Universal Underwriters Insurance Co. v. Wagner,* 367 F.2d 866 (8th Cir. 1966) (requiring an actual or substantial controversy between opposing parties, regardless of its relation to the primary matter in dispute).

**9.** *See Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties").

A stay would entail the following considerations: The policy against piecemeal litigation; the law governing the coverage issues is state, not federal; the lack of any indication that the New Jersey courts will not adequately protect the rights of all parties. *See Step–Saver Data Systems, Inc. v. WYSE Technology,* 912 F.2d 643, 646 (3d Cir.1990) ("[T]here is [a] considerable amount of discretion built into the Declaratory Judgment Act itself"); *General Reinsurance Corp. v. Ciba–Geigy Corp.,* 853 F.2d 78, 81–82 (2d Cir.1988) (district court did not abuse its discretion in staying the action where the multi-state insurance companies involved could easily litigate in the state forum, the district court placed the greatest weight on the avoidance of piecemeal litigation, and the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties); *Aetna Casualty & Surety Co. v. Carew,* No. 89–8383, slip op. at 2, (E.D.Pa. Jan. 31, 1990), *aff'd,* 914 F.2d 241 (3d Cir.1990) ("As long as state court jurisdiction persists . . . there is no compelling reason for a second court to become involved in a determination of the same issues"); *Pennsylvania Manufacturers Association Insurance Co., Inc. v. Gilbert Spruance Co.,* 1988 WL 136534, 2 (E.D.Pa. Dec. 16, 1988) (to decline dismissal "would only result in the maintenance of separate actions involving the same issues").