EMPLOYERS INSURANCE
OF WAUSAU, a Mutual
Company

v.

CROWN CORK & SEAL COMPANY, INC.; Aetna Casualty & Surety Company; Continental Insurance Company; Insurance Company of North America; Lumbermens Mutual Casualty Company; Firemen's Fund Insurance Company; Allianz Underwriters, Inc.

Lumbermens Mutual Casualty
Company, Appellant.

No. 91–1060.

United States Court of Appeals,
Third Circuit.

Argued June 6, 1991.

Decided Aug. 30, 1991.

Mark M. Wilcox (argued) and Theresa W. Hajost, Drinker Biddle & Reath, Philadelphia, Pa., for appellant Lumbermens Mut. Cas. Co.

Gregory J. Castano (argued), Kenneth D. McPherson, Jr., Robert J. Donaher, Wa-

ters, McPherson, McNeill, Secaucus, N.J., and Michael J. Stack, Stack & Gallagher, Philadelphia, Pa., for appellee Crown Cork & Seal Co., Inc.

Before SLOVITER, Chief Judge, and GREENBERG and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Appellant Lumbermens Mutual Casualty Co., which, along with several other insurance companies and Crown Cork & Seal Co., their insured, was named as a defendant in the district court, appeals from the order dismissing the plaintiff's complaint for lack of subject matter jurisdiction. The district court determined that the parties were improperly aligned, and that once they were properly aligned, with all the insurers on one side and their insured Crown on the other, there would no longer be complete diversity between the plaintiffs and the defendant.

## I.

*Background Facts and Procedural History*

Crown Cork & Seal Co. has been named as a defendant or potentially responsible party in claims arising out of alleged environmental hazards at more than twenty waste disposal sites throughout the country. In February 1988, Crown filed a complaint in New Jersey Superior Court, Law Division, seeking a declaration of the obligations of its insurers to defend and indemnify it in the underlying environmental litigation. It named as defendants seven insurance companies who had issued comprehensive general liability or excess umbrella policies to Crown over the past three decades. Named as defendants were Lumbermens, Employers Insurance of Wausau (Wausau), Aetna Casualty & Surety Company, Insurance Company of North America (INA), Continental Insurance Company, Firemen's Fund Insurance Company, and Allianz Underwriters, Inc.

Ten months after the New Jersey state court action was filed (though before Crown had effected service on the defendants in that action), Wausau initiated this suit in the United States District Court for the Eastern District of Pennsylvania against Crown and the other six insurers who are Wausau's co-defendants in Crown's state court action. Wausau sought a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, of the scope and nature of its obligations and those of the other six insurers under their various policies providing coverage to Crown. Wausau alleged that the district court had subject matter jurisdiction under 28 U.S.C. § 1332 by virtue of the diversity of citizenship between Wausau and all the defendants.

Crown moved to realign the parties and dismiss for lack of jurisdiction. It asserted that all the insurers should be aligned with Wausau as plaintiffs, because they all had the common interest of seeking to avoid liability to Crown. Such a realignment would destroy diversity because Crown and one of the insurers, INA, are both citizens of Pennsylvania. In the alternative, Crown sought a stay of the federal proceeding pending the outcome of the state action. Without deciding the jurisdictional issue, the district court granted Crown's motion for a stay, relying in the alternative on the Declaratory Judgment Act or the abstention principles enunciated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

On appeal, we vacated the district court's order because the court's grant of a stay presupposed that it had subject matter jurisdiction. We remanded the case for further consideration of Crown's challenge to the parties' diversity and motion for realignment of the parties. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42 (3d Cir.1990) (*Crown I*). Specifically, we instructed the district court to determine the primary issue or controversy in the action and whether the parties need to be realigned in light of that principal purpose of the litigation.

On remand, the district court found that "[t]he primary issue .... is whether any insurer is obligated according to the terms of its own policy to defend or indemnify Crown against the pending environmental clean-up claims." *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 753 F.Supp. 160, 164 (E.D.Pa.1990) (*Crown II* ). Because the primary dispute was between the insurers and their insured, the district court held that the parties had to be realigned, with all of the other insurers joining Wausau as plaintiffs, leaving Crown as the only defendant. The realignment destroyed diversity, and the court dismissed the action. *Id.* at 164–65.

Only one insurer, Lumbermens, challenges the district court's order in this court; the others have not joined the appeal. We exercise plenary scope of review because the issue is one of law.

## II.

### *Discussion*

#### A.

The leading case on the realignment of parties according to their real interests in a controversy is *City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). In that decision, the Court iterated the fundamental principle that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *Id.* at 69, 62 S.Ct. at 17. "It is our duty ... to 'look beyond the pleadings and arrange the parties according to their sides in the dispute'.... Whether the necessary 'collision of interests ... exists ... must be ascertained from the 'principal purpose of the suit' ... and the 'primary and controlling matter in dispute'....' " *Id.*

In that case, the Court identified as the "primary and controlling matter in dispute" whether the city was bound by a lease between Indianapolis Gas Company and Citizen Gas Company after the latter conveyed its property and the lease to the city. *Id.* at 70–72, 62 S.Ct. at 17–18. Finding that the two gas companies had always

been united in their position that the city was obligated by the lease, the Court concluded that the companies had to be realigned on the same side of the controversy. That realignment destroyed diversity. *Id.* at 74–75, 62 S.Ct. at 19–20; *see also Smith v. Sperling,* 354 U.S. 91, 96–97, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957) (applying analysis of *City of Indianapolis* but holding realignment not necessary in that case); 3A Moore's Federal Practice ¶ 19.03 (1991).

From the *City of Indianapolis* decision courts have evolved two similar but distinct inquiries to determine whether parties must be realigned. As noted in our opinion in *Crown I,* this court, as well as the Court of Appeals for the Ninth Circuit, has adhered to the "principal purpose" or "primary issue" test, under which a court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue. Our opinion in *Crown I* was consistent with the analysis employed by this court since our decision in *Ackerman v. Hook,* 183 F.2d 11, 14–15 (3d Cir. 1950). *See also Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 n. 2 (9th Cir.1987) (adopting principal purpose test); *Zurn Industries, Inc. v. Acton Constr. Co.,* 847 F.2d 234, 237 (5th Cir.1988) ("The determination of the 'primary and controlling matter in dispute' ... is to be determined by plaintiff's principal purpose for filing its suit.... If the parties are not realigned on that claim, and there is no showing that the claim was a sham simply asserted for federal jurisdiction, subject matter jurisdiction exists.").

The other approach, employed by the Seventh Circuit as well as some district courts in this circuit prior to our first opinion in this action, focuses on the language in *City of Indianapolis* that a "substantial controversy" must exist between citizens of different states. *See* 314 U.S. at 69, 62 S.Ct. at 17. Under this inquiry, a court determines merely whether there is any substantial conflict between opposing parties, regardless of whether it is on a primary or non-primary issue and regardless of whether the parties have common posi-

tions on equally important issues. *See Fidelity & Deposit Co. v. Sheboygan Falls*, 713 F.2d 1261, 1267–68 (7th Cir.1983); *see also Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870–71 (8th Cir. 1966) (mentioning the "principal purpose" inquiry but apparently requiring only a "substantial controversy" on any issue between parties).

Lumbermens relies primarily on *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146 (7th Cir.1981), a case with facts similar to this. There, Trane incurred some liability and was insured by four insurers. One of them, American Motorists, brought a declaratory judgment action naming Trane and the three other insurers as defendants and seeking a declaration of the four insurers' obligations. The Court of Appeals reversed the district court's realignment and dismissal of the insurers, stating that even though the insurers have a common interest in avoiding liability, the insurers can stay on opposing sides of the litigation because they have a "substantial conflict ... on the duty to defend" since any would benefit from a holding that another had a duty to defend. *Id.* at 150.

Lumbermens' reliance on *Trane* is unavailing. Our precedent acknowledges the Seventh Circuit's use of the "substantial conflict" test to determine whether parties must be realigned, but we opted to follow what we considered to be dispositive Supreme Court analysis. *Crown I*, 905 F.2d at 46 (declining to follow *Sheboygan Falls*, decided two years after *Trane*). Inasmuch as we have already held that the "principal purpose" test is the analysis to be employed in this circuit, neither *Trane* nor the district court decisions in this circuit that predated our first opinion in this case, *see U.S. Fidelity & Guar. Co. v. Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988); *Liberty Mutual Ins. v. Insurance Corp. of Ireland*, 693 F.Supp. 340 (W.D.Pa.1988), can be considered persuasive authority.

## B.

Lumbermens' argument on appeal is essentially one for an exception to the "principal purpose" or "primary issue" test that this court adopted in *Crown I*, 905 F.2d at 46. Lumbermens argues that the principal purpose test is not appropriate for all cases—especially not multiple-issue litigation with several parties—because there may be several equally important issues rather than one dominant one. Lumbermens suggests that some cases, including this one, are a complex mix of interdependent, equally important issues, so that no one point of dispute can be identified as "primary" or "principal." Lumbermens urges that in such cases, courts should simply ascertain whether there is an actual "substantial controversy" on one of the primary issues. With that approach, courts would not have to insist, as the district court did in this case, that "[t]here can be only one 'dominating controversy,' ... only one 'primary issue that divides the parties,' ... no matter how entwined with subsidiary matters it may be." *Crown II*, 753 F.Supp. at 164.

We need not decide whether there may be some multi-party, multi-issue litigation that will fit so poorly into the paradigm of a dispute centered on a single, dominating issue, as covered by the language of *City of Indianapolis*, that another test would be more appropriate. This is not such a case.

It is, of course, true that because each insurer issued a separate policy to Crown, the interpretation of several insurance contracts is at issue. Furthermore, some insurers are concerned not only with the interpretation of the policies they issued, but policies issued by other insurers as well, because coverage under some policies is primary, excess or both. In the determination of insurer liability under those policies, the insurers disagree on several issues of contract interpretation, particularly: (1) whether coverage is "triggered" at the time of actual injury or at the time the harm is discovered; (2) whether a covered "occurrence" took place under any of the policies during the policy period; (3) interpretation of "other insurance" clauses, which define the coverage available under each policy based on the availability of other insurance, and other factors that de-

termine the "apportionment of responsibility" among the insurers for indemnifying Crown. Nonetheless, this case can be fairly analyzed under the "principal purpose" test.

The district court described the principal issue in this case as simply whether the insurers have obligations to defend and indemnify Crown. *Crown II,* 753 F.Supp. at 164. Despite the different theories advanced by the insurers, they are joined in their common goal of avoiding obligations to Crown. Although one insurer may seek to escape on a trigger-of-coverage ruling, another may seek to show that a third insurer provided primary coverage, and so on, they are united in their position that Crown, the insured, should not be able to recover on its insurance policies for its obligation with respect to the environmental cleanups. Their common adversity to Crown is evident. There is no insurer who is not antagonistic to Crown. Crown patently would have been able to maintain this action against all the insurers without being subject to realignment had there been complete diversity.

It is clear that Wausau initiated this action for the purpose of determining its duty to defend and indemnify Crown. The district court looked to the language of Wausau's complaint for its description of the action. The pleadings are always a key source to which courts look when identifying the primary issue for jurisdictional purposes. *See Sperling,* 354 U.S. at 96–97, 77 S.Ct. at 1115–16 ("[T]he proper course is ... to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy.... This is a practical ... determination and is resolved by the pleadings and the nature of the dispute."); *Continental Airlines,* 819 F.2d at 1523 n. 2; *Zurn Industries,* 847 F.2d at 237.

Wausau's complaint states that "the plaintiff [Wausau] ... seeks this Court's determination concerning the scope and nature of its obligations and those of the [six] defendants [who are insurance companies] ... as issuers of certain ... insurance policies providing coverage to the defendant Crown Cork." App. 7–8. The answers of the insurers, including appellant Lumbermens, generally center on their attempts to escape liability to their insured, Crown, not their disputes between each other. Lumbermens' answer asserts that "Lumbermens does not have any obligation under its policy to defend or indemnify Crown." App. 33. Although some insurers also assert a counterclaim and/or cross-claims for contribution from other insurers, generally the courts do not look to cross-claims and counterclaims to determine the primary issue of a dispute. *See Zurn Industries,* 847 F.2d at 237.

Significantly, although Lumbermens points out why the insurers would disagree among themselves on important theories of liability, it has never explained persuasively why only Wausau should be aligned on one side of this litigation while all other insurers, along with their insured, are aligned in opposition. Lumbermens has never claimed that the disagreements among the insurers are ones in which Wausau disagrees with all other insurers. Moreover, the disagreements among the insurers who are presently grouped together as defendants are not so great that their common alignment as defendants in this litigation is inappropriate. Indeed, the failure of six of the seven involved insurers to appeal cannot be overlooked because that failure is a strong indication that their interests in the litigation do not diverge from those of Lumbermens.

In commenting on the rule of complete diversity, the Supreme Court stated in *City of Indianapolis,* "[t]hese requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts." 314 U.S. at 76, 62 S.Ct. at 20. The Supreme Court has long interpreted statutes conferring diversity jurisdiction with "jealous restriction" and "strict construction," so as not to infringe on "state sensitivities" regarding the judicial power reserved to the states on matters of state law, and to "reliev[e] the federal courts of the over-

whelming burden of 'business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business." *Id.*

We believe that our application of the "principal issue" analysis, rather than one that looks only for a "substantial controversy," most closely follows the mandate of the federal courts in diversity litigation to " 'scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' " *Id.* at 77, 62 S.Ct. at 20.

## III.

For the reasons set forth above, we will affirm the judgment of the district court dismissing this case for lack of subject matter jurisdiction.