The FIRST NATIONAL BANK OF MOBILE, etc., Plaintiff,

v.

Tom W. KAUFMAN, et al., Defendants.

Civ. A. No. 83–C–2923–J.

United States District Court,
N.D. Alabama,
Jasper Division.

Sept. 20, 1984.

Alex F. Lankford, III, Caine O'Rear, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for 1st Nat'l of Mobile.

Laurence D. Vinson, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for Muslim Commercial Bank.

Broox G. Holmes, Marshall S. Harris, Armbrecht, Jackson, De Mouy, Crowe, Holmes & Reeves, Mobile, Ala., for Allied Arabian Trading Co. & Q.M. Butt.

Champ Lyons, Jr., Coale, Hlemsing, Lyons & Sims, Mobile, Ala., for SGS Control Services.

Tom W. Kaufman, pro se.

## MEMORANDUM OPINION

CLEMON, District Judge.

This case arises out of a series of commercial transactions between plaintiff The First National Bank of Mobile ("First National") and various foreign and domestic defendants. Defendant Muslim Commercial Bank ("Muslim") has moved to amend the pretrial order to reflect what it contends to be the exclusive jurisdictional basis for this action, and to strike the jury demand of First National. Accordingly, the Court must determine (1) whether 28 U.S.C. § 1330 is the sole basis of federal district court jurisdiction in actions involving foreign states; (2) whether actions involving foreign states must be tried without a jury, and (3) whether the denial of a jury trial in actions involving foreign states violates the United States Constitution's seventh amendment guarantee of a jury trial.

Muslim issued a transferable documentary letter of credit No. CSB 34/69 in the amount of $943,566.25 at the request of a customer. First National was the negotiating bank.

In Count Three of its complaint, First National requests a declaratory judgment to the effect that the draft presented under letter of credit No. CSB 34/69 was properly negotiated by it and that Muslim is not entitled to reimbursement. In its answer, Muslim asserted a counterclaim alleging that First National wrongfully negotiated the documentary draft under the letter of credit.

### I.

Both §§ 1330 and 1332 of the Judicial Code speak to the question of district court jurisdiction in actions involving foreign states. Section 1330 was created under the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq.* Section 1332 allows a trial by jury, while § 1330 does not. Muslim submits that § 1330 supercedes the contrary language of § 1332.

FSIA was enacted to provide a comprehensive, uniform scheme of handling suits involving foreign states by delineating when actions can be maintained against such states and when those states are entitled to the protective aegis of restrictive immunity.[1] Section 1330 establishes the jurisdictional basis for cases involving foreign states. It provides in pertinent part:

The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity....

Section 1603 of the Act defines a foreign state as "including an entity which is a separate legal person, corporate or otherwise, a majority of whose shares or other interest is owned by a foreign state." Without question, Muslim is wholly owned by the government of Pakistan; and as such, it squarely falls within § 1603's definition of a foreign state.

Prior to the enactment of the FSIA in 1976, jurisdiction over actions involving foreign states was subsumed under the general paremeters of diversity jurisdiction as embodied in 28 U.S.C. § 1332. Reference to jurisdiction over actions involving foreign states was specifically found in § 1332(a). Before the FSIA was passed, § 1332(a) read as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

1. citizens of different states;

2. citizens of a state and foreign states or citizens or subjects thereof; and

3. citizens of different states and in which foreign states or citizens or subjects thereof are additional parties.

Section 3 of the FSIA provided that § 1332(a) be amended to read thusly:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

1. citizens of different states;

2. citizens of a state and citizens or subjects of a foreign state;

3. citizens of different states and in which citizens or subjects of a foreign state are additional parties; and

4. a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a state or of different states.

■ This amendment deleted the references to "foreign states" (to be distinguished from citizens or subjects of a foreign state) previously found in paragraphs (2) and (3) of 28 U.S.C. § 1332(a), and added paragraph (4) which covers situations involving a "foreign state" only in the limited circumstance where the foreign state brings the action as plaintiff. These changes were made to bring the existing all encompassing diversity statute into conformity with § 1330 which was specifically intended to govern jurisdiction over foreign states.

The legislative history of the FSIA further elucidates that § 1330 was intended to supercede § 1332 as the jurisdictional basis of actions involving foreign states: "Since jurisdiction in actions against foreign states is comprehensively treated by the new section 1330, a similar jurisdictional basis under section 1332 becomes superfluous." H.R.Rep. 94–1487, 94th Cong. 2nd Sess. [1976] 5 U.S.Code Cong. & Ad.News 6604, 6613.

The conclusion that § 1330 preempts § 1332 as the jurisdictional basis of cases involving foreign states is clear. Although the 11th Circuit has not addressed the issue, the 2nd, 3rd, 4th, 5th and 9th Circuits have also recognized § 1330 as being the sole jurisdictional basis in the actions in

---

**1.** Muslim concedes that it was involved in commercial activity with the U.S. and is therefore not entitled to restrictive immunity.

question. See *Ruggiero v. Compania Peruana de Vapores*, 639 F.2d 872, 875–76 (2nd Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Rex v. Compania Pervana de Vapores*, 660 F.2d 61, 65 (3d Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 880–81 (4th Cir.1981), *cert. denied*, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417 (5th Cir.1982); *McKeel v. Islamic Republic of Iran*, 722 F.2d 582 (9th Cir.1983).

The United States Supreme Court has also definitively stated that the FSIA "must be applied by the District Courts in every action against a foreign sovereign." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81, 92 (1983).

■ Therefore, given the clear authoritative weight of the language of the FSIA, its legislative history and the case law, this Court concludes that § 1330 is the exclusive jurisdictional basis of this action.

First National alternatively argues that Muslim's counterclaim should be allowed under § 1332(a)(4) as an action by foreign state as plaintiff against a citizen of a state. The court finds this argument unpersuasive.

Section 1332(a)(4) obviously refers to situations in which a foreign state initiates an *action as plaintiff.* This is not the case here. Muslim here asserts a *claim against plaintiff* First National. Muslim did not bring an action, against plaintiff, such as would invoke jurisdiction under § 1332(a)(4).

■ Importantly, Muslim's claim is a compulsory counterclaim. It is a well settled principle that "a compulsory counterclaim requires no independent jurisdictional grounds and is to be considered within the ancillary jurisdiction of the Court." Wright, *Law of Federal Courts*, § 79 at p. 394 (3d ed. 1976), citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506, n. 1, 41 L.Ed.2d 243 (1974); *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926).

In summary, the Court's jurisdiction over Muslim's compulsory counterclaim is merely ancillary to its § 1330 jurisdiction in the main action.

II.

Having determined that the exclusive jurisdictional basis for this action is § 1330 of the FSIA, the Court must now decide whether the action must be tried without a jury. Section 1330 provides that the district court has jurisdiction over any "nonjury civil action" against a foreign state. Although the language of § 1330 does not expressly preclude jury trials, this intent is clearly enunciated in the legislative history:

> As in suits against the U.S. Government, jury trials are excluded. See 28 U.S.C. 2402. Actions tried by a court without jury will tend to promote a uniformity in decision where foreign governments are involved. H.R.Rep., supra, [1976] 5 U.S. Code Cong. & Ad.News at 6611, 6612.

This legislative judgment is entirely consistent with the overriding objective of the FSIA: to promote uniformity in procedures involving foreign states. To further effectuate this general goal, the Act amended 28 U.S.C. § 1441 to provide for the removal of actions against foreign states in state court to federal court. 28 U.S.C. § 1441(d). The amended subsection (d) expressly states that "upon removal the action shall be tried by the court without jury." 28 U.S.C. § 1441(d).

■ Given the FSIA's overriding goal of uniform treatment of foreign states in federal court litigation, it is clear that Congress did not intend for some federal cases involving foreign states in federal courts to be tried with a jury and others to be tried without one. Therefore, the inescapable and logical conclusion is that actions under the FSIA must be tried without a jury. See *Rex v. Compania Pervana de Vapores*, 660 F.2d 61, 65 (3d Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 880–81 (4th Cir.1981), *cert. denied*, 445 U.S. 982, 102

S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872, 875–76 (2d Cir.1981).

### III.

The Court now turns to the issue of whether the denial of trial by jury in § 1330 actions transgresses the constitutional guarantee of jury trials in certain cases. The seventh amendment states in pertinent part:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ... U.S. Const. amend. VII.

The Supreme Court has acknowledged that the Seventh amendment was a declaration of the laws existing at the time of its enactment.

> The Seventh Amendment was declaratory of the existing law, for it required only that jury trial in suits at common law was to be 'preserved.' It thus did not purport to require a jury trial where none was required before. *Atlas Roofing Co. v. Occupational Safety Commission,* 430 U.S. 442, 459, 97 S.Ct. 1261, 1271, 51 L.Ed.2d 464 (1977).

At common law foreign sovereigns enjoyed absolute immunity. As early as 1812, Chief Justice Marshall announced the American doctrine of absolute jurisdictional immunity for a foreign state in the landmark case of *The Schooner Exchange v. McFaddon,* 7 Cranch 116, 3 L.Ed. 287 (1812).[2] Since there was no action against foreign sovereigns at common law, there is no seventh amendment violation for denial of a jury trial.

Further support for the proposition that, consistent with the constitution, jury trials can be denied in actions against foreign states lies in the analogy to actions against a like sovereign, the United States. The Supreme Court has repeatedly held that there is no right to a jury trial in cases against the United States. *McElrath v.*

*United States,* 102 U.S. (12 Otto) 426, 440, 26 L.Ed. 189 (1880); *Galloway v. United States,* 319 U.S. 372, 388, 63 S.Ct. 1077, 1086, 87 L.Ed. 1458 (1943); *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

The legislative history of the FSIA evinces a transparent intent to treat foreign states the same as the United States with respect to the jury issue. H.R.Rep., supra, [1976] 5 U.S.Code Cong. & Ad.News at 6611, 6612.

The Court is therefore led to the conclusion that the denial of a jury trial in actions under the FSIA does not run afoul of the seventh amendment.

Based on the foregoing, this Court is of the opinion that the defendant's motion to amend the pretrial order to reflect 28 U.S.C. § 1330 as the exclusive jurisdictional basis of this action should be granted. The Court further concludes that defendant's motion to strike the jury demand should be granted. A separate order embodying this opinion shall issue.

**2.** Over the years the concept of absolute immunity was eroded and the State Department adopted the standard of restrictive immunity in dealing with foreign governments. Under this theory the sovereign's immunity from jurisdiction was recognized with respect to its public acts (jure imperii) but not as to its private acts (jure gestionis). 26 Dept. State Bull. 984 (1952) (the "Tate letter"). Finally in 1976 this doctrine of restrictive immunity was codified through the FSIA.