**AETNA CASUALTY & SURETY
CO., Plaintiff,**

v.

**DOW CHEMICAL CO., Defendant.**

No. 93–73601.

United States District Court,
E.D. Michigan,
Southern Division.

March 17, 1999.

John F. Milan, Harvey, Kruse, Troy, MI, for Defendant Century Indem. Co.

John F. Milan, Harvey, Kruse, Troy, MI, James F. Martin, Cohn & Baughman, Chicago, IL, for Certain Defendants in 93 cv 73601.

Joseph A. Hinkhouse, Lord, Bissell,, Chicago, IL, for London Insurers, Schlumberger Technology Corp., McCarthy and Cos.

Ronald E. Reynolds, Butzel Long, Birmingham, MI, Matthew R. Wildermuth, Brand & Novak, Chicago, IL, for Movant Ins. Co.

Kenneth C. Newa, Plunkett & Cooney, Petoskey, MI, Charles W. Browning, Plunkett & Cooney, Detroit, MI, for Movant Travelers Cas. and Sur. Co.

Stanley A. Prokop, Plunkett & Cooney, Petoskey, MI, for Movant Intern. Ins. Co.

Jonathan P. Rich, Simpson, Thacher, New York, NY, Kenneth C. Newa, Detroit, MI, Charles W. Browning, Plunkett & Cooney, Detroit, MI, for Plaintiff Aetna Cas. and Sur. Co.

John I. Grossbart, Sonnenschein, Nath, Chicago, IL, for American Home Assur. Co.

Ronald W. Rice, Rice, Galin, Southfield, MI, Charles S. Bergen, Marc S. Lauerman, Michael P. Conway, John Z. Lee, Grippo & Elden, Chicago, IL, Christina L. Sciabica, Grippo & Elden, Chicago, IL, for American Ins. Co., Assoc. Indem. Corp.

## OPINION AND ORDER DENYING AMERICAN RE–INSURANCE COMPANY'S MOTION TO DISMISS AND FINDING PROPER SUBJECT MATTER JURISDICTION

EDMUNDS, District Judge.

This matter came before the Court at a hearing on December 17, 1998 on allegations that subject matter jurisdiction may be lacking in this case. This issue was raised by American Re–Insurance Company's motion to dismiss and memoranda regarding subject matter jurisdiction filed by three parties: (1) American Re–Insurance Company; (2) Dow Chemical Company; and (3) The London Insurers. Subsequently, the parties agreed to dismiss American Re–Insurance without prejudice. As explained below, the Court finds that it has proper subject matter jurisdiction in this case. Accordingly, American Re–Insurance Company's motion to dismiss is denied.

### I. Facts

Initially, on June 5, 1993, Aetna Casualty & Surety Company filed a declaratory judgment action against Dow Chemical Company ("Dow"), American Re–Insurance Company ("Am Re"), and other insurers in Wayne County Circuit Court. Two months later, Aetna voluntarily dismissed that case. Then, on August 25, 1993, Aetna refiled its declaratory judgment action here in federal court, naming Dow[1] and various insurers as defendants. The alleged basis for jurisdiction was diversity. Aetna did not name Am Re a defendant in the original complaint filed in federal court.

On November 24, 1993, Dow filed an Answer and Counterclaim against Aetna as well as a Third Party Complaint. Dow filed an Amended Third Party Complaint on December 10, 1993, and a First Amend-

---

1. Aetna named both Dow Chemical Company and Dow Corning Inc. as defendants in this case. Then, on October 13, 1993, the Court entered an order dismissing Dow Corning Inc.

ed Counterclaim on January 12,1995. The Third Party Complaint added Am Re and certain other insurers as defendants to the action. On November 24, 1993, Dow also filed Cross Claims against certain insurers.

In addition, various insurers filed claims against one another for contribution and indemnity. All of the insurers in this litigation, whether brought in by Aetna or Dow, are collectively referred to as the "Insurers." [2] Cross Claims between all of the Insurers have been deemed filed and stayed pursuant to Case Management Order No. 3.[3] Revised Case Management Order #3, § A II, filed December 2, 1996.

■ The Complaint filed by Aetna and the Amended Third Party Complaint filed by Dow alleged that jurisdiction in this case was based in diversity under 28 U.S.C. § 1332 because this was a suit between citizens of different states and the amount in controversy exceeded $50,000.[4]

Diversity jurisdiction requires that a plaintiff be a citizen of different states than all defendants. A corporation has citizenship in its state of incorporation and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Dow Chemical is a Delaware corporation with its principal place of business in Michigan, and thus its citizenship is in Delaware and Michigan. The Third Party Complaint alleged that all of the third party defendants were diverse from Dow. Specifically, it alleged that Am Re was incorporated in Pennsylvania and had its principal place of business in New Jersey. In fact, Am Re is incorporated in Delaware. When Am Re answered the Third Party Complaint, it admitted that its principal place of business was New Jersey and denied that was incorporated under the laws of Pennsylvania. It did not indicate that, like Dow, it was incorporated in Delaware, and thus was not diverse from Dow.

■ Now, five years later, American Re has asserted for the first time that diversity jurisdiction is improper because it is not diverse from Dow. Accordingly, Am Re filed a motion requesting its dismissal from this case in a pleading captioned "Memorandum Regarding Subject Matter Jurisdiction." Despite Am Re's failure to timely bring the issue of jurisdiction to the Court's attention, the issue of subject matter jurisdiction is not waivable under Fed. R.Civ.Pro. 12(h)(3) and may not be orchestrated by the parties, even by the voluntary dismissal of a party. Thus, the Court must determine whether it has proper subject matter jurisdiction in this case.

## II. Analysis

### A. Am Re's Motion to Dismiss

Am Re requests that it be dismissed from this case due to lack of subject matter jurisdiction. In a nutshell, Am Re contends that the Court must look beyond Am Re's status as a third party defendant and realign it as a defendant with Dow as plaintiff. Because Dow and American Re are not diverse, upon realignment there would be no diversity jurisdiction.

2. The term Insurers as used in this Opinion excludes Third Party Defendants, Dorinco Reinsurance Company, Dorintal Reinsurance Limited, and Timber Insurance Limited, which were brought into this litigation via Fireman's Fund's Third Party Complaint.

3. The claims between the Insurers which have been filed were filed as counterclaims against Aetna and as cross claims against one another. This Opinion and Order formally realigns the parties, as did Revise Case Management Order #3, filed December 3, 1996, with Dow as plaintiff and all of the Insurers as defendants. Thus, all of the claims between the Insurers are hereinafter properly designated as cross claims.

4. The diversity statute was amended in 1996 raising the amount in controversy requirement to $75,000. 28 U.S.C. § 1332(a), amended by Pub.L. No. 104–317, Tit. 11, § 205(a), 110 Stat. 3850 (1996). The applicable amount in controversy in this case is $50,000, as provided by the statute when the case was filed. *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (jurisdiction is determined at the time the case is filed).

■ The diversity statute vests the court with jurisdiction over suits between citizens of different States and over suits between citizens of different States in which citizens of a foreign state are additional parties. 28 U.S.C. § 1332(a)(1) & (3). Diversity must be complete between all of the plaintiffs and all of the defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

Generally, jurisdiction is determined at the time the case is filed. *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 908–09 (6th Cir.1993). Parties may neither waive nor consent to jurisdiction where it does not exist. *In re Wolverine Radio Co.,* 930 F.2d 1132, 1137–38 (6th Cir.1991). "No action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Under 28 U.S.C. § 1653, defective jurisdictional allegations can be corrected by amending a complaint at any time. *Miller v. Davis,* 507 F.2d 308, 311 (6th Cir.1974) (amendments for purpose of correcting jurisdictional allegations are broadly permitted to avoid dismissals on technical grounds). Defective jurisdictional facts, on the other hand, cannot be "corrected" by amending a complaint. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

■■ If jurisdiction exists at the time the complaint is filed, it may not be divested by subsequent events such as the plaintiff's failure to prove his federal question claim, a change in citizenship of the parties, or a reduction in the amount in controversy below the jurisdictional amount. *Jones v. Knox Exploration Corp.,* 2 F.3d 181 (6th Cir.1993); *Klepper v. First American Bank,* 916 F.2d 337, 341 (6th Cir. 1990); *Hensgens v. Deere & Co.,* 833 F.2d 1179 (5th Cir.1987). There are two exceptions to determining diversity at the time a suit is filed. First, the court's realignment of the parties may destroy diversity. Second, joinder or intervention of a nondiverse indispensable party may destroy diversity.

### 1. Realignment

■ To sustain diversity jurisdiction there must be a bona fide controversy between citizens of different states. *City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941). It is the court's responsibility to determine whether diversity jurisdiction is appropriate and to properly align the parties. In *City of Indianapolis,* the Supreme Court explained when realignment is proper.

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interest exists, is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.

*Id.* at 69, 62 S.Ct. 15 (quotation marks and citations omitted). Party alignment should be evaluated on a case by case basis, and not according to inflexible rules. *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.,* 132 F.R.D. 660, 666 (W.D.Mich.1990). "[L]ower courts should be particularly aware of strategic party alignments arranged primarily to satisfy federal jurisdictional requirements." *Id.* Realignment can result in the loss of diversity jurisdiction.

In interpreting *City of Indianapolis,* the circuits are split on whether to use the "primary purpose" test or the "substantial dispute" test to determine realignment. The Third, Fourth, Fifth, Sixth, and Ninth Circuits utilize the "primary dispute" test.

These courts find that in a declaratory judgment action regarding insurance coverage, the parties should be realigned according to the primary dispute, with the insured on one side and the insurers on the other. Concomitantly, they find that contribution and allocation disputes between the insurers are secondary and hypothetical until the insurers' liability is determined. *United States Fidelity & Guar. Co. v. A & S Mfg. Co., Inc.,* 48 F.3d 131 (4th Cir.1995); *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085 (6th Cir.1992); *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 942 F.2d 862 (3d Cir.1991);[5] *Zurn Indus., Inc. v. Acton Constr. Co.,* 847 F.2d 234 (5th Cir.1988); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 n. 2 (9th Cir.1987).

In contrast, the Second, Seventh, Eighth, and Tenth Circuits use the "substantial dispute" test. *Maryland Cas. Co. v. W.R. Grace & Co.,* 23 F.3d 617, 621–24 (2d Cir.1993); *American Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146, 149–51 (7th Cir.1981); *Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384 (10th Cir.1978); *Universal Underwriters Ins. Co. v. Wagner,* 367 F.2d 866 (8th Cir.1966). Applying this test to declaratory judgment insurance disputes, those circuits find that realignment is improper if there is any substantial conflict between opposing parties. Thus, where an insurer brings suit against its insured claiming no duty to provide coverage and against other insurers seeking contribution, the court must not realign the parties because the dispute between the plaintiff insurer and the defendant insurers constitutes a substantial dispute. *See also U.S.I. Properties Corp. v. M.D. Constr. Co.,* 860 F.2d 1 (1st Cir. 1988) (court combined primary dispute and substantial controversy tests).

This Court is bound by the Sixth Circuit's ruling that district courts must realign parties according to the "primary dispute" between them. In a complex environmental insurance coverage action like this one, *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085 (6th Cir.1992), the Sixth Circuit explained how the parties must be aligned. In that case, USF & G filed a declaratory judgment action against certain insureds, claiming that it did not have a duty to defend or indemnify the insureds for claims for environmental contamination, and against certain other insurers, claiming a right of contribution. After the district court found that the insurers had a duty to defend, USF & G and another insurer (Auto–Owners) filed a motion for realignment. Realignment would have had the effect of destroying diversity. The district court held that the primary dispute in the case was whether the insurers had the duty to indemnify any of the insureds, and thus impliedly held that the contributions claims were not relevant for the purpose of realigning and determining diversity. "The principal purpose of the suit and the controlling matter in dispute in this case ... involve[s] the construction, scope, and enforceability of each contract vis-a-vis the insured." 132 F.R.D. at 668. The district court granted the motion to realign the parties nunc pro tunc and dismissed the case for lack of jurisdiction. USF & G and Auto–Owners appealed.

The Sixth Circuit affirmed the holding of the district court, finding that the primary dispute test applied and that the primary dispute was whether the insurers had a duty to indemnify the insureds. 955 F.2d at 1089. The issue of contribution could become moot if there was no duty to indemnify, and thus the contribution issue was ancillary to the primary issue. 955 F.2d at 1089 & 1091. In other words,

---

**5.** Note that while the Third Circuit ordinarily applies the more restrictive primary purpose test, it applies the substantial dispute test to cases brought under the Foreign Sovereign Immunities Act in order to support the Act's grant of federal court jurisdiction. *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation,* 15 F.3d 1230 (3d Cir.1994).

under *USF & G v. Thomas Solvent,* courts should look at whether the citizenship of the insured is diverse from the citizenship of the insurers; courts should not consider whether there is complete diversity of citizenship between the insurers who have claims against one another for contribution.

This case is substantially similar to *USF & G v. Thomas Solvent.* Here, Aetna brought a declaratory judgment action against Dow and various insurers, claiming that it was not obligated to defend or indemnify Dow and claiming that if it was obligated to indemnify, that it had a right of contribution against the other insurers. Dow then filed a Counterclaim against Aetna, Cross Claims against then codefendant insurers, and a Third Party Complaint against additional insurers (including Am Re), all of which sought insurance coverage. Various insurers filed claims against one another for contribution.

It is this Court's responsibility to align Dow and the Insurers according to the primary dispute to ensure that there is a collision of interests between diverse parties sufficient to justify diversity jurisdiction. The primary dispute here is whether the Insurers have a duty to defend and indemnify Dow. Disputes between the Insurers could become moot and thus are ancillary to the primary dispute. Thus, Dow must be aligned as plaintiff and all of the Insurers must be aligned as defendants.[6] Upon realignment, diversity is lost because both Dow and Am Re are citizens of Delaware. The Court may retain diversity jurisdiction, however, because Am Re is a dispensable party who may be dismissed to preserve jurisdiction. Here, the parties dismissed Am Re without prejudice.

## 2. Nondiverse Dispensable Parties

When the nondiverse party is a dispensable party, a court may preserve diversity jurisdiction by dismissing that dispensable party. Both district courts and appellate courts have the authority to dismiss a dispensable party who is a jurisdictional spoiler at any time during the pendency of proceedings. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Commercial Union Ins. Co. v. Cannelton Indus., Inc.,* 154 F.R.D. 164, 170 (W.D.Mich.1994).[7] Even so, such authority should be used sparingly; the court should consider whether the dismissal of the nondiverse party will prejudice any of the remaining parties to the litigation. *Newman–Green,* 490 U.S. at 837–38, 109 S.Ct. 2218.

Federal Rule of Civil Procedure 19 governs the issue of whether a party is a dispensable or indispensable party. Rule 19(a) provides that a person is a necessary party if:

6. It should be noted that on April 29, 1994, the Court issued a case management order which realigned the parties, with Dow as plaintiff and all of the insurers as defendants. Revised Case Management Order No. 3 § A 6 (incorporating realignment from Case Management Order No. 2, § IA). The parties were realigned as a matter of administrative convenience, and not as part of a determination of jurisdiction. Realignment was done "only as an administrative convenience to the Court and parties" and it was "without prejudice to the parties positions with respect to ... the substantive rights of any party." Revised Case Management Order No. 3, § A 6. It should also be noted that the Insurers' claims against one another have been stayed by agreement of the parties pursuant to Case Management Order No. 3. These stayed claims between the Insurers are secondary to the main dispute between Dow and the Insurers, and are hypothetical depending on whether the Insurers are liable to Dow.

7. Similarly, courts have the authority to refuse to join a dispensable party whose presence would destroy diversity. *Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212 (6th Cir.1989). *Compare Grossheim v. Freightliner Corp.,* 974 F.2d 745 (6th Cir. 1992) (diversity jurisdiction cannot be destroyed by joinder or intervention of dispensable party who is nondiverse); *Dean v. Holiday Inns, Inc.,* 860 F.2d 670 (6th Cir.1988) (same); *Kerr v. Smith Petroleum Co.,* 889 F.Supp. 892 (E.D.La.1995) (same).

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

█ Rule 19(b) further explains that a party is "indispensable" if the court determines that it should not proceed in "equity and good conscience" without the presence of that party. Rule 19(b) sets forth guidelines to follow in determining "equity and good conscience" in this context: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Under Rule 19(b), if joinder of an indispensable party would destroy diversity and thus the indispensable party cannot be joined, the case must be dismissed.

█ As a general rule, additional excess insurers are not necessary parties in a suit between an insured and its primary and first level excess insurers. *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 748 F.Supp. 1057, 1065 (D.Del. 1990). First, complete relief can be afforded the present parties. The absence of an excess insurer does not prevent a court from providing relief in an suit between an insured and its primary insurers. *Id.* 748 F.Supp. at 1065. "A subsequent contribution action among [insurers liable on separate and different contracts] would not render the judgment here 'hollow' or partial, or constitute the type of repeated lawsuit Rule 19 is designed to avoid." *Rhone–Poulenc, Inc. v. International Ins. Co.*, 1996 WL 435180 *4 (N.D.Ill.1996) (citing *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D.Ohio 1984) ("The complete relief provision of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible.") Further, an absent excess insurer is not bound by a court's interpretation of the primary policy. *Remington Arms,* 748 F.Supp. at 1066. In addition, there is no substantial risk that the remaining parties, the insured and the primary and first layer excess insurers, will be subject to multiple recovery or inconsistent obligations. The fact that insurance coverage issues may be decided one way in the primary suit and another in a later contribution action is not the type of inconsistent obligation referred to in Rule 19. *Id.* at 1067.

Am Re is a dispensable party in this case because complete and adequate relief can be afforded the parties to this litigation without the presence of Am Re. It is not relevant to a Rule 19 analysis that Am Re could be subject to a later claim for contribution, if the Insurers are found liable to Dow. In addition, Am Re is able to protect its own interests despite its absence from this suit. Am Re will not be bound by this Court's interpretation of other insurance policies, as it is no longer a party to this suit. Finally, there is no substantial risk of multiple recovery or inconsistent obligation to the parties that remain in this suit.[8]

---

8. It should also be noted that at oral argument Dow indicated that Am Re was a dispensable party as to Dow's claims against it. Dow also noted that Am Re was dispensable based on the Court's reasoning in its Court's August 20, 1998 Opinion, holding that there was no justiciable controversy between Dow and certain excess insurers at certain sites

In sum, even though diversity is lost when the parties are realigned in this case, because Am Re is a dispensable party, Am Re could be dismissed under Federal Rule of Civil Procedure 21, governing misjoinder of parties. In this case, it is not necessary for the Court to dismiss Am Re, as the parties have stipulated to Am Re's dismissal without prejudice.[9]

Am Re and Dow both argued that the Court had proper diversity jurisdiction when the case was filed, and that the Court could exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Dow's Third Party Complaint which brought in Am Re. This view is supported by the rationale that subsequent events, including the filing of a third party complaint, should not be allowed to deprive a court of jurisdiction. *See Nevada Eighty–Eight, Inc. v. Title Ins. Co.*, 753 F.Supp. 1516, 1526 (D.C.Nev.1990) (third party defendants should only be realigned if they are indispensable parties). This argument ignores the rules and policies behind realignment. It is the court's duty to look beyond the pleadings and align the parties properly according to their interests. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. at 69, 62 S.Ct. 15. Courts must be on the look out for strategic pleading used to create diversity jurisdiction where none exists. *USF & G v. Thomas Solvent*, 132 F.R.D. at 666.

American Re also argues that the Court had proper jurisdiction over Aetna's original Complaint, it exercised supplemental jurisdiction over American Re, and it should now decline to exercise supplemental jurisdiction because Aetna has settled and its claims were dismissed by stipulation on December 9, 1998. In support of this argument, American Re cites *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir.1992). Wolotsky simply does not apply to this case. In *Wolotsky*, the court explained that where a district court had federal question jurisdiction and then dismissed the federal question claims prior to trial, the court ordinarily should dismiss state law claims over which it previously exercised supplemental jurisdiction. This is not a case where the Court dismissed the federal question claim that gave the Court jurisdiction in the first place. In this case, the Court has diversity jurisdiction and jurisdiction under the Federal Sovereign Immunities Act.

### 3. Jurisdiction over Dorinco

Fireman's Fund filed a Third Party Complaint against three insurers owned by Dow—Dorinco Reinsurance Company, Dorintal Reinsurance Limited, and Timber Insurance Limited.[10] This Third Party Complaint seeks contribution and equitable contribution as well as indemnity. The Court has diversity jurisdiction over this portion of the case under 28 U.S.C. § 1332.

Fireman's Fund is the name used in this litigation for a group of three insurers comprised of Fireman's Fund Insurance Company, The American Insurance Company, and Associated Indemnity Corporation. These companies are citizens of New Jersey and California.[11] Third-party Defendants Dorintal and Timber have Bermuda as their principal place of business and place of incorporation. Dorinco has Michigan as its principal place of business and place of incorporation.

---

where there was no reasonable possibility that Dow's liability would ever reach the excess amount set forth in the relevant policies.

**9.** Also, as discussed below, there is an alternative basis for jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330(a).

**10.** Fireman's Fund filed its Third Party Complaint on June 18, 1996 and filed an identical copy on July 8, 1996.

**11.** The principal place of business of all three companies is California, and Fireman's Fund Insurance Company and Associated Indemnity Corporation are incorporated in California. The American Insurance Company is incorporated in New Jersey.

■ The presence of Dorinco in this litigation does not affect the Court's finding that it has diversity jurisdiction over the primary matter in dispute here, Dow's suit against its Insurers. The citizenship of Dorinco should not be considered for the purposes of realignment because Dow has not filed a claim against Dorinco.[12] The only claim against Dorinco is Fireman's Fund's Third Party Complaint for contribution and indemnity, a claim that is not part of the primary dispute.

■ Moreover, because this is a third-party action, there is no need for an independent basis for jurisdiction over this action; the Court may exercise supplemental jurisdiction. Under 28 U.S.C. § 1367, a court may exercise supplemental jurisdiction over a claim for contribution brought as a third-party action; there is no need for an independent basis for jurisdiction over such a claim. *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810 (2d Cir.1979). Supplemental jurisdiction over Dorinco, which is non diverse from Dow, does not destroy diversity. *Parker v. Crete Carrier Corp.*, 914 F.Supp. 156 (D.Ky.1996).

## B. The London Insurers

### 1. Diversity Jurisdiction

The Court also has diversity jurisdiction with regard to the London Insurers. Under the structure of the insurance market known as Lloyd's of London, an insurance policy is obtained by contacting a Lloyd's broker who insures the risk by obtaining subscribers. The subscribers are syndicates, comprised of a few hundred or many thousand anonymous investors referred to as "Names" or underwriters. The broker insures the risk through agreements with the syndicates who each subscribe to a certain percentage of risk on the policy. The syndicates are not incorporated and have no independent legal identity. One Name from one of the syndicates is usually designated as a representative of all of the Names in all of the syndicates that subscribes to a given insurance policy, and that Name is the "lead underwriter" who is disclosed on the insurance policy. When litigation over a Lloyd's of London policy occurs, only the lead underwriter Name is sued. Even so, all of the Names in each of the syndicates subscribing to the policy is severally liable on the policy. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir.1998); *Certain Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42 (6th Cir.1994).

In addition to the Lloyd's of London syndicates, a second group of London market investors participates in risk, sometimes on the same policies. This group consists of companies incorporated under foreign laws.

■ In order to determine the citizenship of the Lloyd's of London underwriters for diversity purposes, the Sixth Circuit has held that courts should look only to the citizenship of the active or managing underwriters, and not to every syndicate member name, based on the theory that the managing underwriter acted as an agent for an undisclosed principal. *Layne*, 26 F.3d 39. Other circuits have disagreed with Layne. *See E.R. Squibb*, 160 F.3d 925 (2d Cir.1998) (holding that when lead underwriter is sued in representative capacity, every name must be diverse; when

---

12. Note that Dow could not assert a claim against Dorinco under *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (in diversity case, plaintiff may not assert claims against nondiverse third party defendants where there is no independent basis for jurisdiction; plaintiff may not defeat requirement of complete diversity by suing only diverse defendants and awaiting the impleader of nondi-verse defendants). "The limits upon federal jurisdiction ... must be neither disregarded nor evaded." *Owen*, 437 U.S. at 374, 98 S.Ct. 2396. Congress codified *Owen v. Kroger* in the supplemental jurisdiction statute, 28 U.S.C. § 1367(b) (in diversity suit, there is no supplemental jurisdiction over plaintiff's claims against nondiverse third-party defendant).

underwriter is sued in individual capacity, only that individual must be diverse); *Indiana Gas Co. Inc. v. Home Ins. Co.,* 141 F.3d 314, 319 (7th Cir.1998) (to determine diversity, court should look to the citizenship of every name or subscriber to to syndicates that acted as insurer).

This Court, of course, is bound by the *Layne* precedent. Thus to determine whether diversity is appropriate, the Court must look to the citizenship of the lead underwriter for the syndicates and to the citizenship of each of the corporate subscribers on each of the London policies. Here, counsel for the London Insurers filed an affidavit indicating that the citizenship of the lead underwriter for the syndicates and the citizenship of the corporations on each of the London policies at issue in this lawsuit is diverse from Dow. Hinkhouse Affidavit filed January 13, 1999.

In addition to determining diversity of citizenship, the Court must determine whether the amount in controversy has been met. While *Layne* did not directly address the issue of amount in controversy, it is only logical that under the rule of *Layne* where the court looks only to the citizenship of the lead underwriter as a representative of the syndicates, the court should look to the value of the policies to determine the amount in controversy. Further, the amount in controversy claimed in good faith by a plaintiff controls, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Gafford v. General Electric Co.,* 997 F.2d 150 (6th Cir.1993).

Here, Dow has alleged that its claims against the London Insurers meets the jurisdictional amount. The jurisdictional amount at the time this suit was filed was $50,000. It does not appear to a legal certainty that the claims are for less than this amount. Counsel for the London Insurers submitted an affidavit which stated that, under this Court's analysis of *Layne,* the amount in controversy existed with respect to the Lloyd's of London lead underwriters and with respect to the companies who severally subscribed to the London policies. Hinkhouse Affidavit filed February 11, 1999.

### 2. Jurisdiction Under the Foreign Sovereign Immunities Act

In addition to having diversity jurisdiction, this Court also has jurisdiction over this action under 28 U.S.C. § 1330 and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–1611. One of the companies that subscribed to the London policies was ICAROM, PLC, formerly known as the Insurance Company of Ireland. ICAROM is owned and operated by the Republic of Ireland. Under section 1330, federal district courts have jurisdiction over civil actions against foreign states.

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) (Congress did not exceed the scope of Article III by enacting FSIA).

ICAROM qualifies as a foreign state because it is an "instrumentality" of Ireland, as Ireland owns a majority of its shares. 28 U.S.C. § 1603(a) & (b); *Liberty Mut. Ins. Co. v. Ins. Corp. of Ireland, Ltd.,* 693 F.Supp. 340 (W.D.Pa.1988) (Republic of Ireland owns majority of Insurance Corporation of Ireland and thus it qualifies as a foreign state). ICAROM is not immune from suit, presumably because this suit is based on commercial activity carried on in the United States by ICA-

ROM. *Id.* § 1605(a)(2). Accordingly, this Court has jurisdiction over Dow's claims against ICAROM.

■■■ Furthermore, by the presence of ICAROM in this case, the Court has jurisdiction over the entire case. Courts find jurisdiction over the entire case based on two theories. Some courts find that jurisdiction over the other parties arises under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). *See, e.g., In re Air Crash Disaster Near Roselawn*, 96 F.3d 932, 943 (7th Cir.1996). Other courts find that the FSIA provides jurisdiction over all of the parties to a suit where there is a foreign defendant. For example, some courts reason that under the FSIA removal provision, 28 U.S.C. § 1441(d), jurisdiction is extended over "actions" against a foreign state, not merely over claims against a foreign state. *See, e.g., Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1408 (9th Cir.1989). Under either theory, because the Court has jurisdiction under the FSIA over ICAROM, this Court also has jurisdiction over the remainder of the case.

■■■ It should be noted that 28 U.S.C. § 1330 does not recognize a jury right in actions against foreign states. In cases where a foreign sovereign has codefendants who are not also foreign sovereigns, the prevailing practice is to conduct simultaneous parallel trials, trying the claims against the foreign sovereign to the bench and trying the claims against the other defendants to a jury. *See e.g., In re Aircrash Disaster Near Roselawn*, 909 F.Supp. 1083, 1113–14 (N.D.Ill.1995) (citing numerous cases). The Sixth Circuit has impliedly approved of this practice. *Adkins v. GAF Corp.*, 923 F.2d 1225 (6th Cir.1991) (district court entered findings of fact and conclusions of law based on advisory jury findings with regard to foreign state and jury rendered verdict on claims against other defendants). The legislative history to the FSIA recognizes that the statutory scheme set out in 28 U.S.C. § 1330 is analogous to that contained in the Federal Tort Claims Act (FTCA), and that parallel proceedings are common in FTCA cases.

> In discussing the nonjury trial provisions of section 1330(a), the House Report twice refers to the analogy of 28 U.S.C. § 2402, barring jury trial against the United State in suits under the Federal Tort Claims Act.... Parallel trial procedures ... are common in Federal Tort Claims Act cases involving nongovernment codefendants.

*Gould v. Aerospatiale Helicopter Corp.*, 40 F.3d 1033, 1035 (9th Cir.1994).[13] In sum, there is no right to a jury trial on Dow's claims against ICAROM, and these claims will be tried to the bench. All remaining claims may be tried to the jury.

### III. Conclusion

American Re–Insurance Company's motion to dismiss is DENIED as moot because the parties already dismissed American Re–Insurance without prejudice. Further, the Court finds that it has proper subject matter jurisdiction in this case.

---

13. Two courts have held that where the FSIA is the sole basis for jurisdiction, the entire case must be tried to the bench and the parties do not have a right to a jury trial. *Goar v. Compania Peruana de Vapores*, 688 F.2d 417 (5th Cir.1982); *First Nat'l Bank of Mobile v. Kaufman*, 593 F.Supp. 1189 (N.D.Ala.1984). These anomalous cases do not recognize the prevailing practice nor do they acknowledge the analogy to FTCA cases. Even if this Court were to follow these cases, the Court would find that the non foreign sovereign defendants in this case have the right to a jury trial because this Court has an independent basis for jurisdiction in diversity.